FARHAD NOVIAN (SBN 118129)
farhad@novianlaw.com
ALEXANDER KANDEL (SBN 306176)
alexanderk@novianlaw.com
JARED C. XU (SBN 314646)
jaredx@novianlaw.com
**NOVIAN & NOVIAN LLP**
1801 Century Park East, Suite 1201
Los Angeles, California 90067
Telephone:   (310) 553-1222
Facsimile:   (310) 553-0222

Attorneys for Plaintiff LEAH FLORES

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAH FLORES, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>JD E-COMMERCE AMERICA LIMITED, a Delaware business entity, JD.COM AMERICAN TECHNOLOGIES CORPORATION, a Delaware business entity, JINGDONG E-COMMERCE (TRADE) HONG KONG CORPORATION LIMITED, a Hong Kong Business Entity, WALMART, INC., a Delaware business entity; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. **COPYRIGHT INFRINGEMENT—Count I**<br>2. **VICARIOUS COPYRIGHT INFRINGEMENT—Count I**<br>3. **CONTRIBUTORY COPYRIGHT INFRINGEMENT—Count I**<br>4. **COPYRIGHT INFRINGEMENT—Count II**<br>5. **VICARIOUS COPYRIGHT INFRINGEMENT—Count II**<br>6. **CONTRIBUTORY COPYRIGHT INFRINGEMENT—Count II**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff LEAH FLORES, ("Plaintiff") by and through her undersigned counsel, hereby complains against defendants JD E-COMMERCE AMERICA LIMITED, a Delaware business entity ("Joybuy America"), JD.COM AMERICAN TECHNOLOGIES CORPORATION, a Delaware business entity ("Joybuy Tech"), JINGDONG E-COMMERCE (TRADE) HONG KONG CORPORATION LIMITED, a Hong Kong Business Entity ("Joybuy") (collectively the "Joybuy Defendants"), WALMART, INC., a Delaware business entity ("Walmart"); and DOES 1 through 10, inclusive (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff creates and obtains rights to unique two-dimensional non-functional artistic designs and photographs for display as visual art and use on textiles and accessories. Physical uses of these designs are transacted primarily in and through the apparel and home goods industries.  Plaintiff owns these artworks in exclusivity and exploits these designs for profit by selling products bearing the designs or entering into licensing agreements for sale or display by third parties. Defendants have knowingly and intentionally used such artworks in the production and/or sale of unauthorized goods which infringe upon Plaintiff's copyrights in at least two different works. What's more, they have done so across a variety of product categories which directly compete with Plaintiff and Plaintiff's authorized third-party partners.

## JURISDICTION AND VENUE

2.      The Court has original subject matter jurisdiction over Plaintiff's federal claims arising under the Copyright Act of 1976, Title 17 U.S.C., § 101 et seq. under 28 U.S.C. § 1331, 1338 (a) and (b).

3.      The Court has ancillary subject matter jurisdiction over Plaintiff's state law claims under principles of pendent jurisdiction and pursuant to 28 U.S.C. § 1367(a).

4.    This Court has personal jurisdiction over the Defendants because the events or omissions giving rise to the claim occurred, the tortious acts occurred, and a substantial part of the injury took place and continues to take place, in this judicial district and/or each of the Defendants can be found in this judicial district.

5.    Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C §§ 1391(b), 1391(c), and 1400(a) on information and belief that: (a) this is a judicial district in which a substantial part of the events giving rise to the claims occurred the tortious acts occurred, and a substantial part of the injury took place and continues to take place; and (b) Defendants are subject to the Court's personal jurisdiction with respect to this action.

6.    On information and belief, Defendants Joybuy America and Joybuy Tech are corporate subsidiaries of Joybuy, a Chinese e-commerce business listed on the NASDAQ stock exchange in New York, New York under the ticker JD. Joybuy has significant ties to this jurisdiction, including several highly publicized deals with American companies and attempts to further expand their business operations in the U.S.A.

7.    On information and belief Defendants Joybuy America and Joybuy Tech are fully or substantially owned and controlled by Defendant Joybuy, which has intentionally availed itself of this court's jurisdiction through the course of its business operations.

8.    On information and belief the Joybuy Defendants sell and ship products via their various branded websites nationwide throughout the U.S.A., including to the Central District of California.

9.    Indeed, the Joybuy Defendants have previously and continuously availed themselves of this jurisdiction, with the website *joybuy-us.com*, explicitly affiliated with Joybuy America and featuring similar branding and products as the

other Joybuy Defendants, describing their business as "headquartered in Irvine, California, with distribution facilities located throughout the United States."

10.     Additionally, on information and belief, Joybuy has additional fully or substantially owned and controlled corporate subsidiaries operating out of this jurisdiction, including Jingdong Logistics United States Company, a Delaware business entity with its principal place of business in Industry, California.

11.     Notably, Joybuy America, Joybuy Tech, and Jingdong Logistics United States Company all list the exact same CEO, Secretary, CFO, and agent for service of process on their filings with the California Secretary of State. This individual, Nani Wang, is listed as located in California in all such filings.

12.     As to Defendant Walmart, they have significant physical and commercial ties to this jurisdiction through their various retail stores located in the Central District of California.

13.     Additionally, on information and belief Defendant Walmart also sells and ships products via the affiliated website *Walmart.com* nationwide throughout the U.S.A., including to the Central District of California.

## **THE PARTIES**

14.     Plaintiff is an individual residing in the State of Oregon.

15.     Plaintiff is informed and believes, and thereon alleges, that Defendant Joybuy America, is, and at all times relevant was, a Delaware business entity with its principal place of business located in Irvine, California.

16.     Plaintiff is informed and believes, and thereon alleges, that Joybuy America advertises, distributes, and sells products under various brand names, including "Joybuy Express," "Joybuy America," and "Joybuy US" to consumers throughout the United States, including consumers within this Court's jurisdiction.

17.     Additionally, Plaintiff is informed and believes and thereon alleges that Defendants Joybuy America and Joybuy Tech are corporate subsidiaries of Joybuy, a Chinese e-commerce business listed on the NASDAQ stock exchange in

New York, New York under the ticker JD.

18.     Plaintiff is informed and believes and thereon alleges that Defendants Joybuy America and Joybuy Tech are fully or substantially owned and controlled by Defendant Joybuy.

19.     Plaintiff is informed and believes, and thereon alleges, that Joybuy advertises, distributes, and sells products under its own brand names, including "Joybuy," to consumers throughout the United States, including consumers within this Court's jurisdiction.

20.     Additionally, Plaintiff is informed and believes, and thereon alleges that Joybuy has additional corporate subsidiaries operating within this court's jurisdiction.

21.     Defendant Walmart is Joybuy's single largest shareholder; this ownership stake has been widely covered in financial and business media.

22.     Defendants DOES 1 through 10 are individuals and/or entities whose true names and capacities are presently unknown to Plaintiff.  Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, each of the fictitiously named defendants was the agent, servant, and/or employee of her or her co-defendants and, in doing the things herein mentioned, was acting within the scope of her or her authority as such agent, servant, and/or employee, and with the permission and consent of her or her co-defendants, and that each of said fictitiously named defendants is, in some manner, liable or responsible to Plaintiff based upon the facts hereinafter alleged and thereby proximately caused injuries and damages to Plaintiff as more fully alleged herein.  Accordingly, Plaintiff sues said defendants by said fictitious names.  At such time as said defendants' true names and capacities become known to Plaintiff, Plaintiff will seek leave to amend this Complaint to insert said true names and capacities of such individuals and/or entities.

**ALTER EGO LIABILITY AS TO THE JOYBUY DEFENDANTS AND**

**DOES 1-10**

23.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant to this Complaint, there existed a unity of interest and ownership between Defendants Joybuy America, Joybuy Tech, and Does 1-10, on the one hand, and Defendant Joybuy.

24.     Joybuy America and Joybuy Tech are the alter ego of Joybuy in that Joybuy America and Joybuy Tech are, and at all relevant times were, mere shells, instrumentalities, and conduits through which Joybuy carried on business in the name of Joybuy America and Joybuy Tech while exercising complete control and dominance over Joybuy America and Joybuy Tech, including their business and assets, to such an extent that any individuality or separateness between Joybuy America, Joybuy Tech, and Joybuy did not exist.

25.     Joybuy America and Joybuy Tech are, and at all times herein mentioned were, so inadequately capitalized that their capitalizations were illusory and trifling.

26.     At all times relevant to this Complaint, the Joybuy Defendants shared identical or near identical branding, websites, and email addresses. In fact, Joybuy America and Joybuy use the *exact same* branding and logo on *Walmart.com*.

27.     At all times relevant to this Complaint, the Joybuy Defendants shared employees.

28.     At all times relevant to this Complaint, Joybuy America and Joybuy Tech both operated in whole or part out of the same offices located at 675 E Middlefield Rd, Mountain View, California 94043.

29.     At all times relevant to this Complaint, the Joybuy America and Joybuy Tech listed the *exact same individual*, Nani Wang, as CEO, CFO, and Secretary in their filings with the California Secretary of State. Ms. Wang was listed as located at the aforementioned Mountain View address in filings for both of the aforementioned Defendants.

30.     At all times relevant to this complaint, Joybuy America and Joybuy Tech shared the same agent for service of process.

31.     The shared office space, employees, executives, and branding between the aforementioned entities indicate a systematic and persistent failure to maintain an arms' length relationship between the Joybuy Defendants.

32.     Adherence to the fiction of the separate existence of the Joybuy Defendants would permit an abuse of the corporate privilege and would sanction fraud, promote injustice, and otherwise aid in the commission of unlawful conduct. This is true because, as Plaintiffs are informed and believes, at all relevant times, these Defendants were commingling assets in a manner that allowed them to utilize and freely transfer those assets amongst themselves. The commingling of assets and unlawful business conduct by the Joybuy Defendants were intended, among other things, to allow Joybuy to avoid liability to Plaintiff for valid obligations.

33.     Additionally, Plaintiff is informed and believes, and thereon alleges, that at all times relevant to this Complaint, that Joybuy had additional alter ego corporate subsidiaries located within this Jurisdiction whose identities and potential roles in the Joybuy Defendants' infringement of her copyrights is not yet known.

34.     This includes, at minimum, Jingdong Logistics United States Company, a Delaware business entity with its principal place of business in Industry, California. Like Joybuy America and Joybuy Tech, Jingdong Logistics United States Company lists Nani Wang as its CEO, CFO, and Secretary, and lists her as located at 675 E Middlefield Rd, Mountain View, California 94043. Additionally, Jingdong Logistics United States Company lists the same agent for service of process as Joybuy America and Joybuy Tech.

35.     In the event that Plaintiff discovers the identities, actions, and roles of these believed additional alter ego corporations, she will amend this Complaint to include them in this lawsuit.

## PLAINTIFF'S COPYRIGHT

36.     Plaintiff is a professional artist, photographer, and designer who regularly sells, licenses, or otherwise exploits her artwork to clients and third-party retailers.

37.     Plaintiff has additionally previously created artwork for and/or been featured by various high profile national brands and publications such as Elle, Free People, and Marie Claire.

38.     Plaintiff's artworks are distinctive, stylized, and recognizable relative to other artists' works.

39.     Plaintiff has expended considerable resources and efforts in creating, developing, and marketing her artworks, which are essential to her business.

40.     Due to recurrent issues with piracy and infringement of her works, Plaintiff regularly registers her works with the US Copyright Office.

41.     Plaintiff owns, and had owned prior to the infringing acts complained of herein, all copyrights to a two-dimensional artwork designated as "Pacific Ocean" (the "Pacific Ocean Artwork").

42.     The Pacific Ocean Artwork was first published in November of 2014 and is registered with the United States Copyright Office as Registration No. VA0002247113.

43.     In or about November 2014, Plaintiff began advertising, displaying, and selling the Pacific Ocean Artwork in commerce throughout the United States including, but not limited to Plaintiff's website, *leahflores.com*, on her social media pages, and through authorized third-party retailers.  The Pacific Ocean Artwork was widely disseminated through the website.

44.     Plaintiff also owns, and had owned prior to the infringing acts complained of herein, all copyrights to a two-dimensional artwork designated as "Happy Place" (the "Happy Place Artwork"):

45.     The Happy Place Artwork was first published in September 2013 and is registered with the United States Copyright Office as Registration No.

VA0002108020. It is also the subject of an additional supplemental registration with the United States Copyright Office, Registration No. VA0001434052,

46.    On or about November 20, 2013, Plaintiff began advertising, displaying, and selling the Happy Place Artwork in commerce throughout the United States including, but not limited to Plaintiff's website, *leahflores.com*, on her social media pages, and through authorized third-party retailers.  The Happy Place Artwork was widely disseminated through the website.

47.    Collectively, Plaintiff's Pacific Ocean Artwork and Happy Place Artwork will be referred to as the "Artworks".

## DEFENDANTS' INFRINGING CONDUCT

48.    Upon information and belief, the Joybuy Defendants are in the business of commercially manufacturing, selling, distributing, and displaying a variety of items via e-commerce channels, including home furnishing goods.

49.    Upon information and belief, the Joybuy Defendants sell products through both first party channels, such as their own websites, as well as through third party e-commerce sites including *Walmart.com*.

50.    In or around late 2021, Plaintiff discovered that the Joybuy Defendants were selling goods on *Walmart.com* including, but not limited to, tapestries which bore artwork identical or substantially similar to Plaintiff's Pacific Ocean Artwork ("First Infringing Pacific Ocean Goods").

51.    In total, Plaintiff discovered four different listings for such infringing tapestries on *Walmart.com*. Although each listing was slightly different, each and every tapestry in question was identified in their respective listings as being "Sold and Shipped by JD Express – JD E Commerce America Limited."

52.    Additionally, in or around late 2021, Plaintiff discovered that Joybuy itself was also selling pillows on *Walmart.com* which bore artwork identical or substantially similar to Plaintiff's Happy Place Artwork ("First Infringing Happy Place Goods"). Such goods were identified in their listing as being "Sold and

Shipped by Joybuy – Jingdong E-Commerce (Trade) Hong Kong Corporation."

53.    Accordingly, in late 2021 Plaintiff, through her counsel, filed DMCA take down notices with *Walmart.com* for all listings for the First Infringing Pacific Ocean Goods and First Infringing Happy Place Goods.

54.    In early January of 2022, Plaintiff, through her counsel, addressed a letter to Joybuy America to inform them of the infringing nature of the First Infringing Pacific Ocean Goods and the Infringing Happy Place Goods. Plaintiff demanded, among other things, that Joybuy America and its affiliates, including Joybuy, immediately cease and desist from using, copying, reproducing, distributing, displaying, ordering, purchasing, manufacturing, or offering for sale or advertising the Artworks in any way.

55.    Plaintiff's letter was delivered via FedEx to Joybuy America's address listed on both their website and their filings with the California Secretary of State.

56.    Plaintiff also sent a copy of her letter to Joybuy America's designated contact email, service-us@jd.com.

57.    Plaintiff received no response to her letter.

58.    In or around February 2022, Plaintiff discovered that the Joybuy Defendants were infringing her work once more, despite having been put on notice by her DMCA takedown notice and her letter, selling a new pillow which bore artwork identical or substantially similar to Plaintiff's Happy Place Artwork ("Second Infringing Happy Place Goods").

59.    This new listing was active well after the Joybuy Defendants were on notice that Plaintiff owned the copyright in Happy Place, and that Joybuy had been infringing upon it. This notice was first provided in or around October 2021 via her DMCA takedown to Joybuy, as well as in January 2022 via her letter to the Joybuy Defendants.

60.    In response, in early March of 2022, Plaintiff, through her counsel, sent a second letter to Joybuy America reiterating her demands, stated in her prior

letter, that the Joybuy Defendants immediately cease and desist from using, copying, reproducing, distributing, displaying, ordering, purchasing, manufacturing, or offering for sale or advertising the Artworks in any way.

61.  Plaintiff's letter was once again delivered via FedEx to Joybuy America's address listed on both their website and their filings with the California Secretary of State.

62.  Plaintiff once again also sent a copy of her letter to Joybuy America's designated contact email, service-us@jd.com.

63.  Plaintiff once again received no response to her letter.

64.  As of March 18, 2022, the Second Happy Place Infringing Goods are still available for sale on *Walmart.com*.

65.  Additionally, in or around March 2022, Plaintiff discovered that there were at least four different additional active listings on *Walmart.com* for tapestries infringing upon Pacific Ocean ("Second Infringing Pacific Ocean Goods"). On information and belief, some or all of these listings were posted after the Joybuy Defendants were put on notice of the infringing nature of their conduct, and all remain active despite the Joybuy Defendants having been put on notice.

66.  These listings include *https://www.walmart.com/ip/Seascape-Ocean-Waves-Tapestry-Print-Home-Decor-Wall-Hanging-Tapestry-Beach-Throw-Blanket-A3/939876055*, *https://www.walmart.com/ip/Clearance-Seascape-Ocean-Waves-Tapestry-Polyester-Fabric-Hippie-Bohemian-Print-Home-Decor-Wall-Hanging-Tapestry-Beach-Throw-Blanket-3/987274342*, *https://www.walmart.com/ip/Abcelit-Seascape-Ocean-Waves-Tapestry-Polyester-Fabric-Hippie-Bohemian-Print-Home-Decor-Wall-Hanging-Tapestry-Beach-Throw-Blanket/810799985*, and *https://www.walmart.com/ip/Promotion-Clearance-Seascape-Ocean-Waves-Tapestry-Polyester-Fabric-Hippie-Bohemian-Print-Home-Decor-Wall-Hanging-Tapestry-Beach-Throw-Blanket/979143154*.

67.  Each and every one of the aforementioned active infringing listings

state that they are "Sold and Shipped by JD Express – JD E Commerce America Limited."

68.   As of March 18, 2022, each and every one of the aforementioned active infringing listings remains accessible, allowing the Second Infringing Pacific Ocean Goods to be purchased by consumers.

69.   As of March 18, 2022, the listing for the Second Infringing Happy Place Goods remains accessible, allowing the Second Infringing Pacific Ocean Goods to be purchased by consumers.

70.   Each and every one of the Second Infringing Pacific Ocean Goods and Second Infringing Happy Place Goods have been available for sale well after the Joybuy Defendants were placed on notice that they had previously infringed on the respective related work.

71.   Upon information and belief, the Joybuy Defendants have been selling, marketing, and advertising the First Infringing Pacific Ocean Goods, Second Infringing Pacific Ocean Goods, First Infringing Happy Place Goods, and Second Infringing Happy Place Goods on websites including, but not limited to, *www.Walmart.com*—a website owned and operated by Defendant Walmart.

72.   Upon information and belief, the Joybuy Defendants have also been selling, marketing, and advertising the First Infringing Pacific Ocean Goods, Second Infringing Pacific Ocean Goods, First Infringing Happy Place Goods, and Second Infringing Happy Place Goods on websites owned and operated by the Joybuy Defendants.

73.   The Joybuy Defendants had access to Plaintiff's Pacific Ocean Artwork and Happy Place Artwork through several websites, including through *leahflores.com*. The fact they own multiple websites shows their ability to effortlessly navigate the online space.

74.   Collectively, the First Infringing Pacific Ocean Goods, Second Infringing Pacific Ocean Goods, First Infringing Happy Place Goods, and Second

Infringing Happy Place Goods are the "Infringing Goods".

75.     Upon   information   and   belief,   Joybuy   Defendants   have misappropriated   the   Artworks,   and   have   unlawfully   reproduced,   imported, distributed and/or sold   the   Infringing Goods online   through   websites   such   as *www.Walmart.com,   www.Joybuy.com*,   *www.Joybuy-us.com*   and   to   consumers throughout the United States, including, but not limited to, within this judicial district.

76.     Upon information and belief, the U.S. Copyright Office lists no designated   agent   under   the   Digital   Millennium   Copyright   Act   for   either *www.Joybuy.com* or *www.Joybuy-us.com*.

77.     Upon information and belief, the Joybuy Defendants have, without Plaintiff's authorization, unlawfully reproduced, imported, distributed and/or sold Infringing Goods in this judicial district that feature artworks that are identical or substantially similar to the respective Artworks.

78.     Upon information and belief, the Joybuy Defendants' infringing use of the Artworks are not limited to the Infringing Goods described above, and other goods   Defendants   created,   manufactured,   caused   to   be   manufactured,   imported, distributed, and/or sold may infringe Plaintiff's copyright in the Artworks.

79.     Upon information and belief, the Joybuy Defendants are, unlawfully reproducing, importing, distributing and/or selling goods in this judicial district that feature artworks that are identical or substantially similar to copyrighted works belonging to other entities and/or individuals.

## **WALMART'S INFRINGING CONDUCT**

80.     Plaintiff hereby realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

81.     Walmart operates and controls the e-commerce site *Walmart.com*, and is   in   the   business   of   commercially   manufacturing,   selling,   distributing,   and displaying a variety of items via e-commerce and brick and mortar retail channels.

82.     Defendant Walmart determines which vendors are allowed to sell on *Walmart.com*, as well as what goods they are allowed to offer on its site.

83.     Every listing on *Walmart.com* exists at the pleasure of defendant Walmart.

84.     Defendant Walmart has exhibited a consistent pattern of bad faith conduct and willful blindness regarding infringement of Plaintiff's works by the Joybuy Defendants and unknown does.

85.     Despite having been put on notice of the Joybuy Defendants' pattern of rampant infringement by Plaintiff's DMCA takedowns, Walmart nevertheless permitted the Joybuy Defendants to remain active on its site.

86.     Upon information and belief, Walmart took no action to limit the Joybuy Defendants' ability to sell on *Walmart.com* aside from taking down the reported listings.

87.     Despite Plaintiff's DMCA takedowns Walmart allowed the Joybuy Defendants to re-post identical or substantially similar listings for their infringing goods, leading to the advertisement and sale of the aforementioned second round of infringing goods.

88.     Sadly, the Joybuy Defendants are not the only infringers of Plaintiff's work to sell infringing goods on *Walmart.com*; in fact, the issue is rampant, with at least eight different storefronts on *Walmart.com* selling copies of seemingly the exact same infringing tapestries and pillows as sold by the Joybuy Defendants.

89.     In or around January 2022, Plaintiff, through her counsel, sent cease and demand letters to eight different sellers of infringing goods on *Walmart.com* (including the letter to Joybuy America).

90.     Two of the recipients of these letters responded back that they had never sold any products on *Walmart.com* and knew nothing of the matters discussed in the letter, and were deeply alarmed by an apparent theft of their corporate identity.

91.   At least two different listings for infringing goods, identified on *Walmart.com* as sold by Felipe Reyes, LLC, and Rosie 761, LLC were in fact sold by unknown infringers who stole the identities of these companies (the "Doe Infringers").

92.   The listings and products sold by the Doe Infringers appear *identical* to those of the Joybuy Defendants.

93.   Plaintiff, through her counsel, notified Defendant Walmart of these facts in early 2022, and requested that they assist in her investigation of the Doe Infringers who used their website to sell infringing goods while hiding their identities.

94.   The affected individuals and companies also notified Defendant Walmart of the theft of their corporate identities by users of their site and requested that they assist in Plaintiff's investigation of the Doe Infringers and provide the documents and information necessary to clear their name.

95.   These individuals and companies are willing to provide sworn declarations confirming this identity theft and their requests to Defendant Walmart.

96.   Defendant Walmart refused to assist in any such investigation.

97.   In fact, Defendant Walmart refused to give *any* information relating to the identity of the Doe Infringers.

98.   All attempts by Plaintiff to obtain information relating to the identities of the Doe Infringers has been met with a wall of silence by Defendant Walmart, and a refusal to provide any information absent a lawsuit.

99.   Even after being repeatedly made aware of the presence of rampant infringement, identity theft, corporate impersonation, and possible fraud on *Walmart.com*, Defendant Walmart has taken every step possible to stonewall Plaintiff's investigations into these matters.

100.  To this day Defendant Walmart refuses to provide the information necessary for Plaintiff to identify the Doe Infringers and protect her rights under

statute.

## COUNT ONE:

## COPYRIGHT INFRINGEMENT

### (For Copyright Infringement Against All Defendants)

101.   Plaintiff hereby realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

102.   Plaintiff is informed and believes, and thereon alleges, that Defendants infringed Plaintiff's copyright by creating, making and/or developing directly infringing and/or derivative works from the Pacific Ocean Artwork and by producing, distributing and/or selling the First Infringing Pacific Ocean Goods and Second Infringing Pacific Ocean Goods.

103.   Due to Defendants' acts of infringement, Plaintiff has suffered substantial damages to her business in an amount to be established at trial.

104.   Due to Defendants' acts of infringement, Plaintiff has suffered general and special damages in an amount to be established at trial.

105.   Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits Defendants would not otherwise have realized but for Defendants' infringement of the Pacific Ocean Artwork.  As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the Pacific Ocean Artwork in an amount to be established at trial.

106.   Plaintiff is informed and believes and thereon alleges that Defendants have imported, manufactured, cause to be manufactured and/or sold the First Infringing Pacific Ocean Goods and Second Infringing Pacific Ocean Goods.

107.   Upon information and belief, Defendants also performed such activities being fully aware of Plaintiff's superior rights to the Pacific Ocean Artwork. Therefore, Defendants' acts of copyright infringement as alleged above were, and continue to be, willful, intentional and malicious, subjecting Defendants

to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement. Further, Defendants, and each of their willful and intentional misappropriation and/or infringements of Plaintiff's copyrighted Pacific Ocean Artwork render Defendants liable for statutory damages as described herein.  Within the time permitted by law, Plaintiff will make her election between actual damages and statutory damages. Plaintiff is also entitled to preliminary and permanent injunctive relief.

## COUNT TWO

## CONTRIBUTORY COPY RIGHT INFRINGEMENT

### (For Vicarious Copyright Infringement

### Against All Defendants)

108.   Plaintiff hereby realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

109.   Plaintiff is informed and believes and thereon alleges that Defendants had the ability to control their vendors who engaged in direct copyright infringement.  Defendants had the right to terminate its relationship with its vendors for any reason whatsoever and through that right had the ability to control the activities of its vendors.

110.   In addition, Defendants promoted their vendors' products and were in a position to police them.  Defendants had discretion to end their contracts with their vendors and require the vendors to abide by, observe and obey Defendants' terms that no goods sold to the Defendants should contain copyright infringement of Plaintiff's Artworks.

111.   Defendants financially benefited from their vendors' sales. The Joybuy Defendants would purchase the goods from their vendors at a cheap price, repackage them and sell them for a much higher, but still bargain price to customers for a profit.

112.   The Defendant Walmart was in a position to police the JoyBuy Defendants and had the discretion to end their contracts with the JoyBuy Defendants and to require them to abide by, observe and obey Walmart's terms that no goods on *Walmart.com* should contain copyright infringement of Plaintiff's Artworks.

113.   The Defendant Walmart chose inaction because some of the JoyBuy Defendants' ill-gotten proceeds were going to Walmart.

114.   Thus, all Defendants have reaped substantial financial benefits from their contracts with the infringers. The bargain prices they are able to maintain is a big draw for their customers.

115.   Therefore, Defendants' acts of vicarious copyright infringement as alleged above were, and continue to be, willful, intentional, and malicious, subjecting Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement. Further, Defendants' willful and intentional vicarious misappropriation and/or infringement of Plaintiff's copyrighted Pacific Ocean Artwork renders Defendants liable for statutory damages as described herein. Within the time permitted by law, Plaintiff will make her election between actual damages and statutory damages. Plaintiff is also entitled to preliminary and permanent injunctive relief.

## COUNT THREE

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

### (For Contributory Copyright Infringement

### Against All Defendants)

116.   Plaintiff hereby realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

117.   Defendants' vendors directly infringed on Plaintiff's Pacific Ocean Artwork by knowingly creating, purchasing and selling the First Infringing Pacific Ocean Goods and Second Infringing Pacific Ocean Goods.

118.   Defendants had knowledge of their vendors' infringing conduct. The JoyBuy Defendants tracked, or at least had the ability to track, the vendor from which their products were purchased. Defendant Walmart had knowledge of the JoyBuy Defendants' infringement. Defendant Walmart tracked, or at least had the ability to track, the JoyBuy Defendants' infringing conduct.

119.   Defendants induced, caused or materially contributed to the infringing conduct.

120.   Therefore, Defendants' acts of contributory copyright infringement as alleged above were, and continue to be, willful, intentional, and malicious, subjecting Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement. Further, Defendants' willful and intentional misappropriation and/or infringement of Plaintiff's copyrighted Pacific Ocean Artwork renders Defendants liable for statutory damages as described herein.   Within the time permitted by law, Plaintiff will make her election between actual damages and statutory damages. Plaintiff is also entitled to preliminary and permanent injunctive relief.

## COUNT FOUR:
## COPYRIGHT INFRINGEMENT
### (For Copyright Infringement Against All Defendants)

121.   Plaintiff hereby realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

122.   Plaintiff is informed and believes, and thereon alleges, that Defendants infringed Plaintiff's copyright by creating, making and/or developing directly infringing and/or derivative works from the Happy Place Artwork and by

producing, distributing and/or selling the First Infringing Happy Place Goods and Second Infringing Happy Place Goods.

123.   Due to Defendants' acts of infringement, Plaintiff has suffered substantial damages to her business in an amount to be established at trial.

124.   Due to Defendants' acts of infringement, Plaintiff has suffered general and special damages in an amount to be established at trial.

125.   Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits Defendants would not otherwise have realized but for Defendants' infringement of the Happy Place Artwork.  As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the Happy Place Artwork in an amount to be established at trial.

126.   Plaintiff is informed and believes and thereon alleges that Defendants have imported, manufactured, caused to be manufactured and/or sold the First Infringing Happy Place Goods and Second Infringing Happy Place Goods.

127.   Upon information and belief, Defendants also began such activities although Defendants were fully aware of Plaintiff's superior rights to the Happy Place Artwork. Therefore, Defendants' acts of copyright infringement as alleged above were, and continue to be, willful, intentional, and malicious, subjecting Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement. Further, Defendants' willful and intentional misappropriation and/or infringement of Plaintiff's copyrighted Happy Place Artwork renders Defendants liable for statutory damages as described herein.  Within the time permitted by law, Plaintiff will make her election between actual damages and statutory damages. Plaintiff is also entitled to preliminary and permanent injunctive relief.

**COUNT FIVE:**

# VICARIOUS COPYRIGHT INFRINGEMENT

## (For Vicarious Copyright Infringement

## Against All Defendants)

128.   Plaintiff hereby realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

129.   Plaintiff is informed and believes and thereon alleges that Defendants had the ability to control their vendors who engaged in direct copyright infringement.  Defendants had the right to terminate their relationship with their vendors for any reason whatsoever and through that right had the ability to control the activities of their vendors.

130.   In addition, Defendants promoted their vendors' products and were in a position to police them.  Defendants had discretion to end their contracts with their vendors and require the vendors to abide by, observe and obey Defendants' terms that no goods sold to the Defendants should contain copyright infringement of Plaintiff's Artworks.

131.   Defendants financially benefited from their vendors' sales. The Joybuy Defendants would purchase the goods from their vendors at a cheap price, repackage them and sell them for a much higher, but still bargain price to customers for a profit.

132.   The Defendant Walmart was in a position to police the JoyBuy Defendants and had the discretion to end their contracts with the JoyBuy Defendants and to require them to abide by, observe and obey Walmart's terms that no goods on *Walmart.com* should contain copyright infringement of Plaintiff's Artworks.

133.   The Defendant Walmart chose inaction because some of the JoyBuy Defendants' ill-gotten proceeds were going to Walmart.

134.   Thus, all Defendants have reaped substantial financial benefits from their contracts with the infringers. The bargain prices they are able to maintain is a big draw for their customers.

135.   Therefore, Defendants' acts of vicarious copyright infringement as alleged above were, and continue to be, willful, intentional, and malicious, subjecting Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement. Further, Defendants' willful and intentional vicarious misappropriation and/or infringement of Plaintiff's copyrighted Happy Place Artwork renders Defendants liable for statutory damages as described herein. Within the time permitted by law, Plaintiff will make her election between actual damages and statutory damages. Plaintiff is also entitled to preliminary and permanent injunctive relief.

## COUNT SIX

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

### (For Contributory Copyright Infringement

### Against All Defendants)

136.   Plaintiff hereby realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

137.   Defendants' vendors directly infringed on Plaintiff's Happy Place Artwork by knowingly creating, purchasing and selling the First Infringing Happy Place Goods and Second Infringing Happy Place Goods.

138.   Defendants had knowledge of their vendors' infringing conduct. The JoyBuy Defendants tracked, or at least had the ability to track, the vendor from which their products were purchased. Defendant Walmart had knowledge of the JoyBuy Defendants' infringement. Defendant Walmart tracked, or at least had the ability to track, the JoyBuy Defendants' infringing conduct.

139.    Defendants induced, caused or materially contributed to the infringing conduct.

140.    Therefore, Defendants' acts of contributory copyright infringement as alleged above were, and continue to be, willful, intentional, and malicious, subjecting Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement. Further, Defendants' willful and intentional misappropriation and/or infringement of Plaintiff's copyrighted Happy Place Artwork renders Defendants liable for statutory damages as described herein.   Within the time permitted by law, Plaintiff will make her election between actual damages and statutory damages. Plaintiff is also entitled to preliminary and permanent injunctive relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands the following relief against the Defendants with respect to each claim for relief:

With respect to all Defendants, and each of them, as to Counts One to Four:

1.  That Defendants, Defendants' agents and servants be enjoined from selling the Infringing Pacific Ocean Goods and Infringing Happy Place Goods, or otherwise infringing Plaintiff's copyright in the Pacific Ocean Artwork and Happy Place Artwork;

2.  That Plaintiff be awarded all profits of Defendants plus all losses of Plaintiff in connection with Defendants' infringement of the Pacific Ocean Artwork and Happy Place Artwork, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages as available under the Copyright Act, 17 U.S.C. § 101 et seq.;

3.  That Plaintiff be awarded her attorneys' fees as available under the Copyright Act 17 U.S.C. § 101 et seq.;

4. Directing such other relief as the Court may deem appropriate to prevent Defendants from participating in these or other copyright infringements.

For such other and further relief as the Court may deem just and proper.

Dated:  April 8, 2022                    **NOVIAN & NOVIAN LLP**

By:  ___/s/ Farhad Novian_____
FARHAD NOVIAN, State Bar No. 118129
ALEXANDER KANDEL, State Bar No. 306176
JARED C. XU, State Bar No. 314646

Attorneys for Plaintiff LEAH FLORES, an individual

1

## **DEMAND FOR JURY TRIAL**

2          A jury trial is demanded pursuant to Fed. R. Civ. P. 38.

3

4

5    Dated:  April 8, 2022              **NOVIAN & NOVIAN LLP**

6                                        By:  ___*/s/ Farhad Novian*_____
7                                        FARHAD NOVIAN, State Bar No. 118129
                                         ALEXANDER KANDEL, State Bar No. 306176
8                                        JARED C. XU, State Bar No. 314646

9                                             Attorneys for Plaintiff LEAH FLORES, an
10                                            individual

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28